IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| NEUROCYTONIX, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:24-cv-265 (RDA/LRV) |
| | ) | |
| SIX KIND LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Six Kind LLC's ("Defendant") Motion to Dismiss Plaintiff NeuroCytonix, Inc.'s ("Plaintiff") Amended Complaint. Dkt. 20 (the "Motion"). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been briefed and is now ripe for disposition. Considering the Motion together with Defendant's Brief in Support, Dkt. 21, Plaintiff's Memorandum in Opposition, Dkt. 23, and Defendant's Response in Support of its Motion, Dkt. 26, this Court GRANTS-IN-PART and DENIES-IN-PART the Motion to Dismiss for the following reasons.

## I. BACKGROUND

### A. Factual Background[1]

In Plaintiff's Amended Complaint (the "Complaint), Plaintiff NeuroCytonix alleges that Defendant Six Kind fraudulently induced Plaintiff to enter into a contract, and that Defendant then breached this contract by failing to perform as promised per the terms of this contract. Dkt. 18

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at this procedural stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

¶¶ 55-67.  Specifically, Plaintiff alleges that Defendant knowingly and falsely represented that it would provide, and assume the cost of providing, medical services for two people during their thirty-day stay at Plaintiff's clinic.  *Id.*  Per the Complaint, Defendant failed to pay for services rendered as required by the contract.  *Id.*

Plaintiff, a Maryland corporation, is a biomedical technology company that treats patients for non-progressive neurodegenerative conditions.  *Id.* ¶ 3.  Plaintiff administers treatments to clients at its clinical center in Monterrey, Mexico (the "Monterrey Facility").  *Id.*

Defendant, formerly known as Medical Concierge Network, is a medical concierge service with its principal place of business in Alexandria, Virginia.  *Id*. ¶ 4.  Defendant itself does not provide medical services, but instead connects clients with healthcare resources.[2]  *Id.* ¶ 8.  These services include benefits such as medical monitoring, transport escort, and medically necessary repatriation.  Dkt. 18-2 at 3, Ex. B.

One healthcare resource that Defendant contracts with is Global Rescue LLC ("Global Rescue"), an organization that provides medically necessary repatriations for qualifying customers.  Dkt. 18 ¶ 19.  Plaintiff alleges that, "[u]pon information and belief, an individual must either be a client/member of Global Rescue or a client/member of one of Global Rescue's partners or affiliates, such as [Defendant], in order to receive services from Global Rescue."  *Id.* ¶ 20.  Thus, an individual must be enrolled with Global Rescue prior to travel in order to receive services.  *Id.* ¶ 21.

---

[2] Plaintiff alleges that these healthcare resources include connecting clients to specialty travel insurance.  Dkt. 18 ¶ 8.  Defendant's Membership Agreement, however, specifically states that "membership is not insurance of any kind and involves no element of risk shifting."  Dkt. 18-4, Ex. D, Sec. 2.  The Membership Agreement is attached to and incorporated into the Amended Complaint by reference and, thus, may be considered on a motion to dismiss.

2

Over the last several years, Plaintiff contracted with Defendant to service at least fifty of Plaintiff's patients during their trips to and from the Monterrey Facility. *Id.* ¶ 10. On or about March 18, 2022, Plaintiff contracted with Defendant to facilitate the provision of services for its patient, Derek Draper ("Mr. Draper"), and his spouse, Kate Garraway ("Ms. Garraway"), as they traveled from London to the Monterrey Facility so that Mr. Draper could undergo treatment. *Id.* ¶ 11; Dkt. 18-1, Ex. A. Thereafter, Mr. Draper and Ms. Garraway traveled to the Monterrey Facility on three separate occasions between 2022 and 2023. Dkt. 18 ¶ 12. For each of these trips, Plaintiff contracted with Defendant for its services. *Id.* ¶ 13. Per a July 9, 2023 email from Defendant's Chief Executive Officer, Greg Nassief ("Mr. Nassief"), the "travel plans" for these trips covered two people for their 30-day stay at the Monterrey Facility. Dkt. 18-1 at 3, Ex. B.

On November 13, 2023, Plaintiff contracted with Defendant for coverage of Mr. Draper and Ms. Garraway during their third trip to the Monterrey Facility. *Id.*; Dkt. 18 ¶ 17. Coverage would last for the thirty-day period spanning from November 13 to December 11, 2023. Dkt. 18 ¶ 17. On the final day of this trip, December 11, 2023, Mr. Draper suddenly went into cardiac arrest and then suffered a stroke. *Id.* ¶ 23. Plaintiff alleges that as soon as practicable following this incident, and following examination by medical professionals to determine whether relocation was necessary, it notified Defendant that Mr. Draper required urgent repatriation to London for emergency treatment unrelated to his neurological condition. *Id.* ¶ 25. On December 12 and December 13, 2023, Mr. Nassief informed Plaintiff via telephone "that [Defendant] would register Mr. Draper with Global Rescue and plan and arrange for Global Rescue to provide medically necessary, hospital-to-hospital, emergency transportation for Mr. Draper to London." *Id.* ¶ 26 (internal quotation marks omitted). During a telephone call between Global Rescue, Plaintiff, and

Defendant, on or about December 12, 2023, Global Rescue provided a verbal estimate of $140,000 to repatriate Mr. Draper to London.  *Id.* ¶ 32.

Plaintiff alleges that, on or about December 14, 2023, Mr. Nassief contacted Global Rescue to belatedly enroll Mr. Draper and Ms. Garraway with Global Rescue and requested that Global Rescue "back date" its coverage to a date prior to Mr. Draper's medical emergency.  *Id.* ¶¶ 29-30. On December 15, 2023, Global Rescue informed Plaintiff and Defendant in writing that Mr. Draper was disqualified from its repatriation services due to a pre-existing condition, and instead offered to provide its services at a fee-for-service, or full cost, basis.  *Id.* ¶ 35.

As a result of this confusion, Mr. Draper spent nearly five days in an intensive care unit in Mexico while awaiting transport to London.  *Id.* ¶ 31.  This extended stay cost Plaintiff approximately $250,000 in separate medical expenses.  *Id.*  Moreover, to ensure Mr. Draper received the care he needed, Plaintiff agreed to pay Global Rescue $216,300 for Mr. Draper's repatriation.[3]  *Id.* ¶ 47.  Soon thereafter, Mr. Nassief informed Plaintiff that Defendant would "share" the cost of repatriation, which Plaintiff had already paid in full.  *Id.* ¶ 48; Dkt. 18-5 at 2, Ex. E.  Finally, on December 16, 2023, Global Rescue transported Mr. Draper to London, where he died several weeks later.  Dkt. 18 ¶ 31, n.2.

On December 27, 2023, and January 8, 2024, Plaintiff contacted Defendant, requesting that it honor its agreement to share Mr. Draper's repatriation costs and make an initial payment of $108,150 to Plaintiff, representing fifty percent of the cost of repatriation.  *Id.* ¶ 52.  As of the date of the filing of this lawsuit, Defendant has not paid Plaintiff.  *Id.* ¶ 53.

---

[3] This figure purportedly includes a 5% credit transaction fee.  Dkt. 18 ¶ 47.

## B.  Procedural Background

On February 21, 2024, Plaintiff filed a Complaint in this District against Defendant and Global Rescue.  Dkt. 1.  In the initial Complaint, Plaintiff alleged breach of contract claims against both Defendant and Global Rescue, and alleged fraud in the inducement against Defendant.  *Id.* ¶¶ 51-69.  On March 19, 2024, Plaintiff filed a Notice of Voluntary Dismissal of Defendant Global Rescue, voluntarily dismissing all claims against Global Rescue in the instant action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  Dkt. 12.  Defendant then filed a Motion to Dismiss on the same day that Plaintiff amended its Complaint to allege breach of contract and fraud in the inducement claims against Defendant.  Dkt. Nos. 14; 18.

This Court subsequently denied Defendant's Motion to Dismiss the initial Complaint as moot in light of Plaintiff's Amended Complaint.  Dkt. 19.  On April 9, 2024, Defendant filed an (untimely) Motion to Dismiss the Amended Complaint for failure to state a claim.  Dkt. 20.  On April 23, 2024, Plaintiff filed a Memorandum in Opposition to Defendant's Motion to Dismiss.  Dkt. 23.  On April 24, 2024, Defendant filed a Consent Motion for Extension of Time to File its Motion to Dismiss the Amended Complaint, requesting that this Court excuse its untimely filing due to its excusable neglect under Rule 6(b)(1)(B).  Dkt. Nos. 24; 25.[4]  On April 29, 2024, Defendant filed a Response in Support of its Motion to Dismiss.  Dkt 26.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff bears the burden of stating "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

---

[4] Having considered the Consent Motion for Extension of Time to File Motion to Dismiss, Dkt. 24, to which Plaintiff has consented, Dkt. 25 at 3, and for good cause shown, the Court will GRANT the Motion (Dkt. 24).

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Claims of fraud are subject to the additional requirements of Rule 9(b). Fed. R. Civ. P. 9(b). Rule 9(b) requires that the plaintiff name the time, place, and contents of the false misrepresentations, as well as the identity of the person making the misrepresentation and what he obtained thereby; facts often referred to as the who, what, when, where, and how of the alleged fraud. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008).

### III.  ANALYSIS

Defendant moves to dismiss the instant action on the grounds that Plaintiff has failed to state a plausible claim for either breach of contract or fraud in the inducement. Dkt. 21 at 4-9. Additionally, Defendant moves this Court to dismiss Plaintiff's claim for reasonable attorney's fees because Plaintiff has failed to allege a basis for the recovery of such fees. *Id.* at 9-10. The Court will address each argument in turn.

A.      Plaintiff's Claim for Breach of Contract

"A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits"). *Volvo Constr. Equip. N. Am. Inc. v. ELM Equip. Co., Inc.*, 386 F.3d 581, 599-600 (4th Cir. 2004) Thus, the instant action is governed by Virginia substantive law, as Plaintiff has asserted its claims under diversity jurisdiction. *See* Dkt. 18 ¶ 5.  The essential elements of a breach of contract claim in Virginia include: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach or obligation." *Filak v. George*, 267 Va. 612, 619 (2004).

In the Amended Complaint, Plaintiff claims that Defendant breached its contract by failing to facilitate, and assume the cost of facilitating, Mr. Draper's repatriation services.  Dkt. 18 ¶ 57. Specifically, Plaintiff alleges that Plaintiff and Defendant established a contract for, *inter alia*, the facilitation of medically necessary repatriation services from November 13 to December 11, 2023. Plaintiff further alleges that Defendant had a legal obligation to facilitate these services on December 12, 2023, following Mr. Draper's stroke and cardiac arrest on December 11, 2023; that Defendant failed to facilitate and pay for these services; and that Defendant's failure caused Plaintiff to suffer damages and incur additional costs. *Id.* ¶¶ 55-59.

In response, Defendant argues that Plaintiff has failed to state a claim for breach of contract, as Plaintiff has alleged neither a legally enforceable obligation of Defendant nor a breach of any obligation by Defendant.  Dkt. 21 at 5-6.  More to the point, Defendant argues that Plaintiff has not alleged any binding agreement that obligated Defendant to provide repatriation coverage for Mr. Draper at any point, and that Plaintiff has not alleged that Defendant had a legally enforceable obligation on December 12, 2023, pursuant to a purported contract with a term that ended on

December 11, 2023.  *Id.*

      Taking all facts alleged in the Amended Complaint as true, this Court finds that Plaintiff sufficiently alleges that Defendant had a legally enforceable obligation to Mr. Draper, and by extension Plaintiff, from November 13 to December 11, 2023.  The Amended Complaint makes repeated reference to a contract between Plaintiff and Defendant for the provision of services for Mr. Draper and Ms. Garraway in exchange for payment.  *See, e.g.*, Dkt. 18 ¶¶ 11, 13-15, 17. Though there appears to be no singular document wholly comprising the terms of said agreement,[5] the existence of a contract is sufficiently supported by Plaintiff's various exhibits.  Exhibit A of the Amended Complaint contains an email-chain between a representative of Plaintiff and Mr. Nassief, dated March 18 to March 19, 2022, whereby Mr. Nassief agrees to enroll Mr. Draper and Ms. Garraway for "coverage" starting on March 23, 2022.  Dkt. 18-1 at 2-3, Ex. A.  Exhibit B contains an emailed receipt, dated November 13, 2023, for the $400 purchase of "Derek W. Draper 30 day travel 11/13/23-12/11/23[.]"  Dkt. 18-2 at 2, Ex. B.  Exhibit B also contains an email from Mr. Nassief, dated June 9, 2023, detailing several terms of the "adjusted service for [Plaintiff's] patient traveling to the [Monterrey Facility]."  *Id.* at 3, Ex. B.  Defendant attests to the existence of this contract in its Motion, acknowledging that Plaintiff enrolled Mr. Draper with Defendant for a travel plan ending on December 11, 2023.  Dkt. 21 at 2.  It is clear, therefore, that Plaintiff and Defendant had a contract for the provision of services covering Mr. Draper and Ms. Garraway from November 13 to December 11, 2023, in exchange for consideration in the form of at least $400.  Defendant's argument to the contrary is unconvincing and contrary to established cases interpreting Virginia contract law.  *See Wellmore Coal Co. v. Powell Const. Co., Inc.*, 600 F. Supp.

---

[5] In lieu of a "four-corners" contract, the Amended Complaint instead provides several emails, as well as the Defendant's Membership Agreement, to demonstrate the existence of, and detail the terms of, a contract between Plaintiff and Defendant.  Dkt. 18, Ex. A-B, D.

1042, 1046 (W.D. Va. 1984) ("It is clear under Virginia law that when more than one document makes up a contract, those documents should be interpreted together, each one assisting and determining the meaning intended to be expressed by the others.") (citing *J.M. Turner & Co. v. Delaney*, 211 Va. 168, 176 (1970)).

The documents making up this alleged contract do not, however, establish that Defendant had a legally enforceable obligation on December 12, 2023, to perform in response to an event which transpired within the November 13 – December 11, 2023 window.  Defendant asserts that it did not.  Dkt. 21 at 5.  Defendant avers that the two parties, at most, contracted for the sale of a medical concierge package that made a menu of services available to Mr. Draper from November 13, 2023, through December 11, 2023.  *See id.*  As such, with the passing of December 11, 2023, Plaintiff and Mr. Draper were no longer legally entitled to order from this "menu of services," even if the reason for doing so dated back to within the allotted time frame.  *See id.*

Furthermore, beyond its assertion that it did not contract to make its services available beyond the December 11, 2023 window, Defendant contends that Plaintiff has not "actually alleged any binding agreement that obligated [Defendant] to provide repatriation coverage for Mr. Draper at all."  *Id.*  Defendant buttresses its position that "nothing in the Amended Complaint suggests that [the two documents in Exhibit B] can be read together to establish the terms of a contract for services related to Mr. Draper," by noting the omission of Mr. Draper's name and a price term in the June 9, 2023 email, and the lack of any specific terms in the November 13, 2023 receipt email.  *Id.* at 5-6; Dkt. 21-1 at 2-3, Ex. 1; Dkt. 21-2 at 2, Ex. 2.

As for Defendant's primary contention that it had no legally enforceable obligation on December 12, 2023, the allegations in the Amended Complaint plausibly allege otherwise. Although it is far from clear that Plaintiff's contract interpretation will carry the day, taking

Plaintiff's allegations as true (as the Court must at the motion-to-dismiss stage), Plaintiff sufficiently alleges that Defendant's legally enforceable obligation was not temporally restricted. Plaintiff's position is plausibly stated in the Amended Complaint based on its allegations regarding the parties' contract and communications.  In its June 9, 2023 email, Defendant represented that "[e]ach travel plan *covers* two people for their 30 day stay at [the Monterrey Facility]."  Dkt. 18-2 at 3, Ex. B (emphasis added).  Similar language is reflected in the March 2022 email chain between Plaintiff and Defendant, with Mr. Nassief agreeing to "signup the patient Derek Draper and [Ms. Garraway] for *coverage*[.]"  Dkt. 18-1 at 2-3, Ex. A (emphasis added).  The documents put forth by the parties thus far do not define what "covers" or "coverage" entails, but Plaintiff has plausibly alleged that these terms imply an agreement to facilitate specific medical services, and indemnify Plaintiff for the costs of those services, should a triggering event arise during Mr. Draper's thirty-day stay at the Monterrey Facility.  Indeed, Merriam-Webster defines "cover" in the legal context as meaning "insure[;] to give protection against or compensation or indemnification for[.]"  *Cover*,   Merriam-Webster.com,   https://merriam-webster.com/dictionary/cover (last visited Sep. 2, 2024).  Moreover, Plaintiff's interpretation is supported by Mr. Nassief's acknowledgment of the debt. Dkt. 18-5.  In other contexts, courts have recognized that "[t]he acknowledgement from which a promise may be implied need not be in any particular form or contain any particular substance; it is sufficient if the debt is acknowledged as an existing one, and a liability or a willingness to pay it is inferable therefrom."  *Klein v. Campbell*, 2023 WL 3845303, at *10 (4th Cir. June 6, 2023) (quoting *Nesbit v. Galleher*, 5 S.E.2d 501, 503 (Va. 1939)).  Here, Mr. Nassief sent an email with the subject "Agreement" in which he stated that Defendant "acknowledge[s]" that "we. [sic] agree to share the cost of the repatriation."  Dkt. 18-5.

10

It may be that, after discovery and with context explaining the documents attached to the Amended Complaint, Plaintiff will be unable to prevail on its contract interpretation; but, at this stage of the litigation, Plaintiff has adequately pleaded facts sufficient to establish a breach of contract based on Defendant's failure to pay for Mr. Draper's repatriation despite an obligation to do so. Accordingly, the Court will deny Defendant's Motion to Dismiss with respect to the breach of contract claim.

### B.     Plaintiff's Claim for Fraud in the Inducement

Plaintiff's claim for fraud in the inducement is predicated upon the belief that Defendant knowingly and falsely represented that it would facilitate, and assume the cost of facilitating, Mr. Draper's repatriation services in order to induce Plaintiff to enter, and pay consideration for, its contract with Defendant. Dkt. 18 ¶¶ 61-63. Defendant argues that it never made a false representation, as it did not represent that it would facilitate, or assume the cost of facilitating, repatriation services on December 12, 2023. Further, Defendant asserts that Plaintiff has not alleged fraud with particularity as required by Rule 9(b); and that Virginia's economic loss rule bars Plaintiff from raising a fraud in the inducement claim. *Id.* at 6-9.

In Virginia, fraud in the inducement exists when a party to a contract makes a false representation of a material fact constituting an inducement to the contract on which the other party relied. *See JTH Tax, Inc. v. Aime*, 744 Fed. Appx. 787, 794 (4th Cir. 2018) (citing *George Robberecht Seafood, Inc. v. Maitland Bros. Co.*, 220 Va. 109 (1979)). "A plaintiff asserting a cause of action for actual fraud bears the burden of proving by clear and convincing evidence the following elements: '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'" *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.,* 256 Va. 553, 557-58

11

(1998) (citations omitted).  Additionally, claims of fraud filed in federal court must be pleaded pursuant to Rule 9(b).  *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013).  The "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)."  *Harrison v. Westinghouse Savanna River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

As a preliminary matter, Defendant's first contention in support of its Motion to Dismiss Plaintiff's claim for fraud in the inducement need not be addressed.  Defendant alleges that it did not make a false representation, as it did not represent that it would facilitate, or assume the cost of facilitating, repatriation services on December 12, 2023.  Dkt. 21 at 6-7.  This position is inextricably linked to the question of whether Defendant had a legally enforceable obligation on December 12, 2023, per the terms of the parties' contract.  As this Court has already concluded that Plaintiff has plausibly alleged that the terms of the parties' contract include a legally enforceable obligation to perform in response to events arising between November 13, 2023, and December 11, 2023, this contention does not merit further discussion.

Defendant next argues that Plaintiff fails to meet the particularity requirement of fraud in the inducement.  Under Rule 9(b), "a party [alleging fraud or mistake], must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In this case, Plaintiff must therefore allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *McCauley v. Home Loan Inv. Bank*, F.S.B., 710 F.3d 551, 559 (4th Cir. 2013).  In other words, Plaintiff is required to identify "'the who, what, when, where, and how of the alleged fraud' before access to the discovery process should be granted."  *Murphy v. Capella Educ. Co*., 589 F. App'x 646, 652 (4th Cir. 2014) (quoting *Kellogg Brown & Root*, 525 F.3d at 379).

The Amended Complaint sufficiently satisfies the "particularity" requirement of Rule 9(b) with respect to the fraud claim.  It identifies the "who" as Defendant, and Defendant's CEO, Mr. Nassief, several times throughout the Amended Complaint.  *See, e.g.*, Dkt. 18 ¶¶ 13-15.  It also identifies the "what" as Defendant's promise to facilitate, and assume the cost of facilitating, repatriation services for Mr. Draper and Ms. Garraway during their thirty-day stay at the Monterrey Facility.  *Id.*  It identifies the "when" as, amongst other times, June 9, 2023.  *Id.* at ¶ 14; Dkt. 18-2 at 3, Ex. B.  It identifies the "where" as in writing over email.  Dkt 18 ¶ 14; Dkt. 18-2 at 3, Ex. B. Lastly, Plaintiff identifies the "how" of the alleged fraud by alleging that Defendant induced Plaintiff to contract with the intention of never performing despite "pocketing" the fees it charged to Defendant.  Dkt. 18 ¶¶ 40, 64-65.

Yet, in addition to Rule 9(b)'s "particularity" requirement, Rule 9(b) also requires that a party allege generally malice, intent, knowledge, and other conditions of a person's mind.  Fed. R. Civ. P. 9(b).  Put otherwise, malice, intent, knowledge and other conditions of a person's mind must be alleged in accordance with Rule 8.  *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012).  Although Rule 9(b) does not require a heightened pleading standard for alleging conditions of a party's mind, those conditions must still be alleged in accordance with the Rule 8 plausibility standard.  *Id.*

The Court finds that the Amended Complaint does not plausibly allege fraudulent intent as required.  As previously established, the alleged contract between Plaintiff and Defendant provides that Defendant's travel plan would cover Mr. Draper and Ms. Garraway for their thirty-day stay at the Monterrey Facility.  Dkt. 18-2 at 3, Ex. B.  Plaintiff's fraud claim is predicated upon its belief that this promise was a false statement of fact made with the intention of inducing Plaintiff into paying for a service that Defendant never intended to provide.  Dkt. 18 ¶ 40.  But while this promise

would theoretically be a sufficiently (2) material fact which (5) induced reliance, and (6) resulted in damage, Plaintiff solely cites Defendant's nonperformance and various benign statements made by Mr. Nassief as evidence that this promise was a (1) false representation, (3) made intentionally and knowingly, with (4) intent to mislead.  In other words, the Amended Complaint contains no allegations sufficient to plausibly assert that Mr. Nassief's statements were false or intended to mislead at the time that they were made.

Plaintiff's argument to the contrary fails to persuade.  To be sure, nonperformance alone does not normally serve as a sufficient basis for a fraud in the inducement claim.  *See Abi-Najm v. Concord Condominium, LLC*, 280 Va. 350, 362 (2010) (quoting *Lloyd v. Smith*, 150 Va. 132, 145 (1928)).  "Were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud."  *Id.*  Granted, "an action in tort for deceit and fraud may sometimes be predicated on promises which are made with a present intention not to perform them[,]" however, "the gist of fraud in such case is not the breach of the agreement to perform, but the fraudulent intent[.]"  *Boykin v. Hermitage Realty*, 234 Va. 26, 29 (1987) (quoting *Lloyd*, 150 Va. at 145-46).  Here, Plaintiff's claim relies primarily on the non-performance of the contract and lacks any factual allegations to support Plaintiff's claim that Mr. Nassief's statements were fraudulently made.  As the *Abi-Najm* and *Boykin* Courts recognize, this is not enough.

For example, Plaintiff cites a December 12, 2024 statement from Mr. Nassief, informing Plaintiff that Defendant *would* register Mr. Draper with Global Rescue as evidence for its claim.  Dkt. 18 ¶ 28.  Plaintiff highlights this statement to demonstrate that Defendant failed to prearrange the coverage that it had promised, *id.* ¶ 29, but Defendant did not represent that they would *prearrange* coverage for Mr. Draper.  Instead, Defendant merely promised to "cover" Mr. Draper.  Dkt. 18-2 at 3, Ex. B; Dkt. 18-1 at 1, Ex. A.  These statements alone do not establish fraudulent

intent as the failure to "cover" Mr. Draper is just as plausibly based on mistake or neglect. Similarly, Plaintiff references a conversation between Mr. Nassief and Global Rescue—requesting to belatedly enroll Mr. Draper and "back date" his coverage to before his accident—as evidence of Defendant attempting to cover its tracks.[6] Dkt. 18 ¶¶ 30, 40.  But here too it is unclear how this statement relates to Defendant's intention, or lack thereof, to perform its contractual duty at the time that the contract was entered into in any meaningful way.  At most, this comment is evidence of Defendant attempting to correct a mistake.  "Nothing in the record suggests that [the defendant] did not intend to fulfill its contractual duties at the time it entered into the [contract]."  *Abi-Najm*, 280 Va. at 363 (quoting *McDevitt*, 256 Va. at 560).  Thus, Plaintiff has failed to state a claim.

Moreover, Defendant contends that Virginia's economic loss rule bars Plaintiff's claim for fraud in the inducement.  Dkt. 21 at 8.  "Under Virginia law, 'in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'"  *Bo v. Ruitang*, No. 1:23-CV-79 (RDA/JFA), 2023 WL 5615994, at *6 (E.D. Va. Aug. 30, 2023) (Alston, J.) (quoting *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 82 (2019)).  "This rule does not obtain, however, in those exceptional cases where the [contractual] breach amounts to an independent, willful tort[.]"  *Wright v. Everett*, 197 Va. 608, 615 (1956).  Fraud in the inducement is one such exceptional case.  *See, e.g.*, *Abi-Najm*, 280 Va. at 363 (finding that the duty breached by a defendant did not find its source in contract when the alleged fraud was perpetrated before a contract between the two parties came into existence).

While Plaintiff's claim for fraud in the inducement is not *per se* barred by Virginia's economic loss rule, Plaintiff's claim is nevertheless insufficient as a result of its failure to plausibly

---

[6] Plaintiff also points to Mr. Nassief's offer to "share" the costs of repatriation for the same purpose and to similar effect.  Dkt. 18 ¶ 49.

allege fraud in the inducement.  Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for fraud in the inducement is granted, and Plaintiff's claim for fraud in the inducement is dismissed.

C.      Plaintiff's Request for Reasonable Attorney's Fees

Plaintiff's prayer for relief requests that the Court award Plaintiff all costs and reasonable attorney's fees incurred in this action.  Dkt. 18 at 12.  Defendant argues that Plaintiff should not be permitted to pursue reasonable attorney's fees, as Virginia courts follow the "American rule," and the parties have not contracted around this rule.  Dkt. 21 at 9-10.

Defendant is correct in noting that Virginia courts follow the "American rule," which generally does not permit a prevailing party to recover attorney's fees from the losing party.  *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006).  The American rule is not without exception, as parties may contract around it, but there is no allegation that the parties have done so here.  *Bo,* 2023 WL 5615994 at *12.  Additionally, although cases involving fraud may be an exception to the general rule, Plaintiff has failed to allege a plausible fraud claim.  *See Carlson v. Wells*, 281 Va. 173, 188 (Va. 2011).  Accordingly, Defendant's Motion to Dismiss will be granted with respect to request for reasonable attorney's fees.

IV.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Consent Motion for Extension of Time to File Motion to Dismiss (Dkt. 24) is GRANTED, and Defendant's Motion to Dismiss (Dkt. 21) shall be deemed timely filed; and it is

FURTHER ORDERED that Defendant's Motion to Dismiss (Dkt. 21) is GRANTED-IN-PART and DENIED-IN-PART.  The Motion is granted with respect to Plaintiff's claims for fraud in the inducement and reasonable attorney's fees and denied with respect to Plaintiff's claim for breach of contract; and it is

FURTHER ORDERED that Count 2 of the Amended Complaint is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Plaintiff's claim for attorney's fees is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Plaintiff is DIRECTED to file any amended complaint within FOURTEEN (14) DAYS of this Memorandum Opinion and Order.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all parties of record.

It is SO ORDERED.

Alexandria, Virginia
November 20, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge