IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NEUROCYTONIX, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-265 (RDA/LRV) |
| ) | |
| SIX KIND LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss (Dkt. 33) (the "Motion"). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is fully briefed and ripe for disposition. Considering Plaintiff's Second Amended Complaint (Dkt. 32), Defendant's Memorandum in Support (Dkt. 34), Plaintiff's Opposition (Dkt. 37), and Defendant's Reply (Dkt. 38), this Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

In Plaintiff's Second Amended Complaint ("SAC"), Plaintiff NeuroCytonix alleges that Defendant Six Kind fraudulently induced Plaintiff to enter into a contract, and that Defendant then breached this contract by failing to perform as promised per the terms of this contract. Dkt. 32 ¶¶ 71-83. Specifically, Plaintiff alleges that Defendant knowingly and falsely represented that it

---

[1] For purposes of considering the Motion to Dismiss, the Court accepts all facts contained within the Second Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

would provide, and assume the cost of providing, medical services for two people during their thirty-day stay at Plaintiff's clinic.  *Id.*  Per the SAC, Defendant failed to pay for services rendered as required by the contract.  *Id.*

Plaintiff, a Maryland corporation, is a biomedical technology company that treats patients for non-progressive neurodegenerative conditions.  *Id.* ¶ 3.  Plaintiff administers treatments to clients at its clinical center in Monterrey, Mexico (the "Monterrey Facility").  *Id.*

Defendant, formerly known as Medical Concierge Network, is a medical concierge service with its principal place of business in Alexandria, Virginia.  *Id*. ¶ 4.  Defendant itself is not a medical provider or emergency transport provider but instead purports to contract with other companies who provide these services when needed by Defendant's clients.  *Id.* ¶ 9.  The only way Defendant can provide the "coverage" it purports to provide to its customers is through pre-established, pre-arranged relationships with other providers.  *Id.* ¶ 11.

One healthcare resource that Defendant purportedly contracts with is Global Rescue LLC ("Global Rescue"), an organization that provides medically necessary repatriations for qualifying customers.  *Id.* ¶ 24.  Plaintiff alleges that Defendant's Chief Executive Officer, Greg Nassief ("Mr. Nassief"), knew that, in order to receive services from Global Rescue, the covered individual(s) must either be an existing direct client/subscriber of Global Rescue, or must pay out of pocket for Global Rescue's services.  *Id.* ¶ 25.  Thus, Plaintiff alleges, in order for Defendant to "cover" an individual for emergency medical transport services, the covered individual(s) must be enrolled with Global Rescue prior to travel to receive services, as it is otherwise impossible for Defendant to provide the "coverage" it claims to provide.  *Id.* ¶ 27.

Over the last several years, Plaintiff contracted with Defendant to service at least fifty of Plaintiff's patients during their trips to and from the Monterrey Facility.  *Id.* ¶ 16.  Plaintiff alleges

2

that Defendant had a contractual obligation to subscribe each one of Plaintiff's patients and participating family members—before the beginning of the patient's 30-day treatment protocol period in Mexico—to a specific, patient-related policy with a provider of emergency medical transport services to ensure proper coverage of each patient. *Id.* ¶ 12.

On or about March 18, 2022, Plaintiff contracted with Defendant to facilitate the provision of services for its patient, Derek Draper ("Mr. Draper"), and his spouse, Kate Garraway ("Ms. Garraway"), as they traveled from London to the Monterrey Facility so that Mr. Draper could undergo treatment. *Id.* ¶ 17; Dkt. 32-1, Ex. A. Thereafter, Mr. Draper and Ms. Garraway traveled to the Monterrey Facility on three separate occasions between 2022 and 2023. Dkt. 32 ¶ 18. For each of these trips, Plaintiff contracted with Defendant for its services. *Id.* ¶ 19. Per a July 9, 2023 email from Defendant's Chief Executive Officer, Greg Nassief ("Mr. Nassief"), the "travel plans" for these trips covered two people for their 30-day stay at the Monterrey Facility. *Id.* ¶¶ 20-21; Dkt. 32-2 at 3, Ex. B.

On November 13, 2023, Plaintiff again contracted with Defendant for coverage of Mr. Draper and Ms. Garraway during their third trip to the Monterrey Facility from November 13 to December 11, 2023. Dkt. 32 ¶ 23; Dkt. 32-1 at 2, Ex. B. On the final day of this trip, December 11, 2023, Mr. Draper suddenly went into cardiac arrest and suffered a stroke. *Id.* ¶ 31. Plaintiff alleges that, as soon as practicable following this incident, it notified Defendant that Mr. Draper required urgent repatriation to London for emergency treatment unrelated to his neurological condition. *Id.* ¶ 33. On December 12 and December 13, 2023, Mr. Nassief informed Plaintiff via telephone "that [Defendant] would register Mr. Draper with Global Rescue and plan and arrange for Global Rescue to provide medically necessary, hospital-to-hospital, emergency transportation for Mr. Draper to London." *Id.* ¶ 38 (internal quotation marks omitted). During a telephone call

between Global Rescue, Plaintiff, and Defendant, on or about December 12, 2023, Global Rescue provided a verbal estimate of $140,000 to repatriate Mr. Draper to London.  *Id.* ¶ 45.

Plaintiff alleges that, on or about December 14, 2023, Mr. Nassief contacted Global Rescue to belatedly enroll Mr. Draper and Ms. Garraway with Global Rescue and requested that Global Rescue "back date" its coverage to a date prior to Mr. Draper's medical emergency.  *Id.* ¶¶ 42-43. On December 15, 2023, Global Rescue informed Plaintiff and Defendant in writing that Mr. Draper was disqualified from its repatriation services due to a pre-existing condition, and instead offered to provide its services at a fee-for-service, or full cost, basis.  *Id.* ¶ 48.

As a result of this confusion, Mr. Draper spent nearly five days in an intensive care unit in Mexico while awaiting transport to London.  *Id.* ¶ 44.  This extended stay cost Plaintiff approximately $250,000 in separate medical expenses.  *Id.*  Moreover, to ensure Mr. Draper received the care he needed, Plaintiff agreed to pay Global Rescue $216,300 for Mr. Draper's repatriation.[2]  *Id.* ¶ 62.  Soon thereafter, Mr. Nassief informed Plaintiff that Defendant would "share" the cost of repatriation, which Plaintiff had already paid in full.  *Id*. ¶ 63; Dkt. 32-5 at 2, Ex. E.  Finally, on December 16, 2023, Global Rescue transported Mr. Draper to London, where he died several weeks later.  Dkt. 32 ¶ 44 n.2.

On December 27, 2023, and January 8, 2024, Plaintiff contacted Defendant, requesting that it honor its agreement to share Mr. Draper's repatriation costs and make an initial payment of $108,150 to Plaintiff, representing fifty percent of the cost of repatriation.  *Id.* ¶ 68.  As of the date of the filing of the SAC, Defendant has not paid Plaintiff.  *Id.* ¶ 69.

---

[2] This figure purportedly includes a 5% credit transaction fee. Dkt. 32 ¶ 62.

B.  Procedural Background

On February 21, 2024, Plaintiff filed its original Complaint against Defendant and Global Rescue.  Dkt. 1.  In the initial Complaint, Plaintiff alleged breach of contract claims against both Defendant and Global Rescue, and alleged fraud in the inducement against Defendant.  *Id.* ¶¶ 51-69.  On March 19, 2024, Plaintiff filed a Notice of Voluntary Dismissal of Defendant Global Rescue, voluntarily dismissing all claims against Global Rescue in the instant action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  Dkt. 12.

On the same day, Plaintiff filed an Amended Complaint reasserting its breach of contract and fraud in the inducement claims against Defendant.  Dkt. 18.  Defendant subsequently filed a Motion to Dismiss the Amended Complaint, Dkt. 14, which the Court ultimately granted with respect to Plaintiff's claims for fraud in the inducement and reasonable attorneys' fees and denied with respect to Plaintiff's claim for breach of contract, Dkt. 29 at 16.

On December 16, 2024, Plaintiff filed a Second Amended Complaint, again asserting breach of contract and fraud in the inducement claims against Defendant.  Dkt. 32.  On December 30, 2024, Defendant filed a Motion to Dismiss the Second Amended Complaint and memorandum in support.  Dkts. 33, 34.  On January 13, 2025, Plaintiff filed its Opposition, Dkt. 37, and, on January 21, 2025, Defendant filed its Reply, Dkt. 38.

## II.  LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  When

reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic[,]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Fraud claims are subject to the additional requirements of Rule 9(b). Fed. R. Civ. P. 9(b). Rule 9(b) requires that the plaintiff name the time, place, and contents of the false misrepresentations, as well as the identity of the person making the misrepresentation and what he obtained thereby; facts often referred to as the who, what, when, where, and how of the alleged fraud. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008).

III.  ANALYSIS

In its Motion, Defendant makes three arguments.[3]  *First*, Defendant argues that Plaintiff fails to state a plausible claim for breach of contract (Count I) because it was impossible for Defendant to secure third-party emergency medical transport services by the time Plaintiff paid for Defendant's services.  *Second*, Defendant argues that Plaintiff fails to state a plausible claim for fraudulent inducement (Count II) because Plaintiff knew or should have known of this impossibility at the time it paid for Defendant's services.  *Third*, Defendant argues that Plaintiff has not alleged any basis for the recovery of attorneys' fees because it seeks only damages, not equitable relief.  The Court will address each argument in turn.

A.  Breach of Contract (Count I)

"A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits."  *Volvo Constr. Equip. N. Am. Inc. v. ELM Equip. Co., Inc.*, 386 F.3d 581, 599-600 (4th Cir. 2004).  Thus, the instant action is governed by Virginia substantive law, as Plaintiff has asserted its claims under diversity jurisdiction.  *See* Dkt. 32 ¶ 5.  The essential elements of a breach of contract claim in Virginia include: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach or obligation."  *Filak v. George*, 267 Va. 612, 619 (2004).  "In Virginia, it is 'well settled that where impossibility [of performance] is due . . . to the fortuitous destruction or change in the character of something to which the contract related, or which by the terms of the contract was made a necessary means of performance, the promisor will

---

[3] Defendant did not renew its prior argument that Plaintiff did not plausibly allege fraudulent intent as required for its fraudulent inducement claim (Count II), which formed the basis for the Court's prior dismissal of that claim and the claim for attorney's fees.  *See* Dkt. 29 at 13-16.

7

be excused, unless he either expressly agreed in the contract to assume the risk of performance, whether possible or not, or the impossibility was due to his fault.'" *RECP IV WG Land Invs. LLC v. Cap. One Bank (USA), N.A.*, 295 Va. 268, 284-85 (2018) (quoting *Hampton Rds. Bankshares, Inc. v. Harvard*, 291 Va. 42, 53-54 (2016)).

Here, Defendant argues that its alleged contractual duty never arose because, based on the allegations in the Second Amended Complaint, by the time Plaintiff paid Defendant for its services, Mr. Draper's 30-day treatment period had already begun, and it was thus impossible for Defendant to *pre*-enroll Mr. Draper and Ms. Garraway, which it was required to do to ensure proper coverage. *See* Dkt. 32 ¶ 12 ("In particular, Six Kind had a contractual obligation to subscribe each NeuroCytonix patient and participating family member—<u>before</u> the beginning of the patient's 30-day treatment protocol period in Mexico—to a specific, patient-related policy with a provider of emergency medical transport services to insure [sic] proper coverage of each patient." (emphasis in original)); *id.* ¶ 27 ("In order for Six Kind to 'cover' an individual for emergency medical transport services, the covered individual(s) <u>must</u> be enrolled with Global Rescue <u>prior to travel</u> in order to receive services. It is otherwise <u>impossible</u> for Six Kind to provide the 'coverage' it claims to provide." (emphasis in original)); Dkt. 32-2 at 2 (email purporting to show "sales receipt" provided to Daniel Robert Trujilo by Six Kind LLC for payment of $400.00 on November 13, 2023 at 9:12 PST for "Derek W Draper 30 day travel 11/13/23-12/11/23").

As a preliminary matter, the Court notes that, a 12(b)(6) motion to dismiss, which tests the sufficiency of the complaint, "generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Indeed, "these defenses are more properly reserved for consideration on a motion for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). Only in "relatively

rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint" may a defendant raise—and the Court consider—an affirmative defense at the motion to dismiss stage. *Goodman*, 494 F.3d at 464. Importantly, a plaintiff does not need "to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised." *Id.* at 466. Indeed, to succeed in the "rare circumstances" in which an affirmative defense is considered on a motion to dismiss, "the defendant must show that the plaintiff's potential [response] to the affirmative defense was foreclosed by the allegations in the complaint." *L.N.P. v. Kijakazi*, 64 F.4th 577, 586 (4th Cir. 2023) (brackets in the original).

Turning back to the instant case, even assuming Defendant has shown a *prima facie* case of impossibility, at this stage, Defendant has not shown that Plaintiff's potential responses to the impossibility defense raised by Defendant are foreclosed by the Second Amended Complaint. For example, the allegations do not foreclose the argument that Defendant expressly agreed to assume the risk of performance. *See* Dkt. 32 ¶ 30 ("Mr. Nassief's own statements and conduct demonstrate that he knew Six Kind would not be able to provide the services it contracted with NeuroCytonix to provide for Mr. Draper and Ms. Garaway."); *id.* ¶ 21 ("Mr. Nassief expressly represented and agreed that '[e]ach travel plan covers two people for their 30 day stay at your [NeuroCytonix's] clinic."); *id.* ¶ 43 ("Mr. Nassief asked Global Rescue to 'back date' the coverage to a date prior to Mr. Draper's medical emergency."). Accordingly, Defendant's Motion will be denied as to the breach of contract claim.

### B.  Fraudulent Inducement (Count II)

In Virginia, fraud in the inducement exists when a party to a contract makes a false representation of a material fact constituting an inducement to the contract on which the other party relied. *See JTH Tax, Inc. v. Aime*, 744 F. App'x. 787, 794 (4th Cir. 2018) (citing *George*

*Robberecht Seafood, Inc. v. Maitland Bros. Co.*, 220 Va. 109 (1979)). "A plaintiff asserting a cause of action for actual fraud bears the burden of proving by clear and convincing evidence the following elements: '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'" *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 557-58 (1998) (citations omitted).

Here, Defendant argues that, based on the allegations in the Second Amended Complaint, Plaintiff knew or should have known that it paid Defendant too late for Defendant to secure third-party services. Thus, Defendant argues, Plaintiff has not plausibly alleged reliance on a misrepresentation. The Court is unconvinced. Plaintiff has alleged that they were induced to pay Defendant by a promise of coverage that Defendant could not provide and did not provide. *See* Dkt. 32 ¶ 21 ("Mr. Nassief expressly represented and agreed that '[e]ach travel plan covers two people for their 30 day stay at your [NeuroCytonix's] clinic.'"); *id.* ¶ 43 ("Mr. Nassief asked Global Rescue to 'back date' the coverage to a date prior to Mr. Draper's medical emergency."). Accordingly, Defendant's Motion will be denied as to the fraudulent inducement claim.

### C. Attorneys' Fees

"It is well-established that Virginia follows the 'American Rule,' which provides that generally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant." *St. John v. Thompson*, 299 Va. 431, 435 (2021) (quoting *Chacey v. Garvey*, 291 Va. 1, 8 (2015)). One exception to this general rule is that "fees are proper if the trial court, exercising its discretion in a fraud case, awards equitable relief, and further determines that the circumstances surrounding fraudulent acts and the nature of the relief granted compel an award of attorney's fees." *Id.* Because Plaintiff seeks

damages and because specified equitable relief is not sought here, attorneys' fees are not recoverable under the Second Amended Complaint.  *See St. John*, 299 Va. at 435; *see also Johnson v. Bella Gravida, LLC*, 111 Va. Cir. 325, 2023 WL 12069346, at *9 n.10 (2023) (unpublished) ("The fraud claims do not provide a basis for recovery of attorney's fees because no equitable relief is sought, only money damages." (citing *St. John*, 299 Va. at 435)); *Li v. Xu*, 2021 WL 8085418, at *6 (E.D. Va. June 23, 2021) (holding the fraud exception did not apply to common law fraud claim because equitable relief was not appropriate), *report and recommendation adopted in relevant part*, No. 1:20-cv-00241 (E.D. Va. Aug. 18, 2021).  Thus, the Motion will be granted as to attorneys' fees.

***

Accordingly, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 33) is GRANTED-IN-PART and DENIED-IN-PART.  The Motion is granted with respect to Plaintiff's claim for attorneys' fees and denied with respect to Counts I and II; and it is

FURTHER ORDERED that Plaintiff's claim for attorneys' fees is DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that a scheduling order will issue promptly.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all counsel of record.

It is SO ORDERED.

Alexandria, Virginia
August 29, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge